ROONEY v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit.    March 10, 1913.)

No. 2,107.

1. INDICTMENT AND INFORMATION (§ 129*)—OFFENSES—JOINDER—ELECTION.
   Rev. St. § 1024 (Act Feb. 26, 1853, c. 80, § 1, 10 Stat. 161 [U. S. Comp.
   St. 1901, p. 720]), provides that when there are several charges against
   any person for the same act or transaction, or for two or more connected
   acts or transactions or two or more acts or transactions of the same
   class of crimes or offenses, which may be properly joined, the whole may
   be joined in one indictment in separate counts. *Held,* that where counts
   of an indictment for feloniously introducing intoxicating liquors into the
   Indian country charged accused, in one count, with aiding, inciting, and
   abetting another to commit the crime, and in another count with being a
   principal in the commission of the same crime, they were properly joined
   and the court properly declined to compel the government to elect on
   which it would rely for a conviction.
   [Ed. Note.—For other cases, see Indictment and Information; Cent.
   Dig. §§ 414–418;  Dec. Dig. § 129.*]

2. CRIMINAL LAW (§ 1149*)—INDICTMENT AND INFORMATION (§ 132*)—WRIT OF
   ERROR—MOTION TO COMPEL ELECTION—DISCRETION—REVIEW.
   A motion to compel the government to elect between counts of an in-
   dictment is addressed to the discretion of the trial court, and the denial
   thereof is not reviewable on writ of error.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3039–3043,
   3058;  Dec. Dig. § 1149;* Indictment and Information, Cent. Dig. §§ 425–
   453;  Dec. Dig. § 132;*  Assault and Battery, Cent. Dig. § 114.]

3. CRIMINAL LAW (§ 80*)—PRINCIPALS AND ACCESSORIES—AIDING AND ABET-
   TING.
   Under Penal Code, § 332 (Act March 4, 1909, c. 321, 35 Stat. 1152 [U.
   S. Comp. St. Supp. 1911, p. 1686]), providing that whoever directly com-
   mits any act constituting an offense defined in any law of the United
   States, or aids, abets, counsels, commands, induces, or procures its com-
   mission, is a principal, where accused was charged in different counts of
   an indictment, first, with aiding, inciting, and abetting another to feloni-
   ously introduce intoxicating liquors into the Indian country, and in an-
   other count with being a principal in the commission of the same crime,
   and it appeared that accused ordered and directed his codefendant to pro-
   cure and bring in the liquor, acquittal of the latter was no objection to
   a conviction of accused.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 103–111,
   1384;  Dec. Dig. § 80.*]

4. CRIMINAL LAW (§ 80*)—FELONIES—PRINCIPAL AND ACCESSORY.
   In the absence of statute abolishing the distinction between principal
   and accessory in felonies, all who are present, aiding and abetting when
   a felony is committed, are principals either in the first or second degree,
   and, if in the second degree, may be arraigned and tried before the
   principal in the first degree, and may be convicted, though the party
   charged as the principal in the first degree is acquitted.
   [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 103–111,
   1384;  Dec. Dig. § 80.*]

In Error to the Circuit Court of the United States for the District
of Oregon; Robert S. Bean, Judge.

Stewart Rooney was convicted of feloniously introducing liquor into the Indian country, and he brings error. Affirmed.

Indictment for violation of provisions of Act Jan. 30, 1897, c. 109, 29 Stat. 506, entitled: "An act to prohibit the sale of intoxicating drinks to Indians, providing penalties therefor, and for other purposes."

The plaintiff in error was jointly indicted with one Vincent Wontock for unlawfully and feloniously introducing intoxicating liquor into the Indian country in violation of the provisions of Act Jan. 30, 1897, c. 109, 29 Stat. 506, prohibiting the sale of intoxicating drinks to Indians. The facts upon which the indictment was founded were as follows: On the evening of the 14th of April, 1911, the plaintiff in error, Stewart Rooney, an Indian, together with other Indians, was engaged in a gambling game at the home of William Metcalf, situated on the Siletz Indian reservation, in Lincoln county, Or. There was also present one Vincent Wontock, a white boy who was in the employ of Rooney as a laborer. At said time and place Rooney, the plaintiff in error, solicited Noble Felix, one of the other Indians who was there present, to contribute to a fund for the purchase of whisky. Another Indian, Clayborn Arden, and Rooney, also contributed to the fund. The money thus collected was turned over to Wontock by Rooney, with instructions or directions to go to Toledo (situated outside of the reservation and about nine miles distant), and buy some whisky for him, Rooney, and also for the Indians Noble Felix and Clayborn Arden. Wontock then borrowed a horse from Noble Felix, rode to Toledo, and returned to the reservation about 4 o'clock on the following morning, bringing with him three bottles of whisky. The whisky was distributed in Metcalf's barn, Rooney himself taking one, Noble Felix another, and Clayborn Arden the third. At the trial of the case there was introduced in evidence a bottle containing whisky which had been taken from Clayborn Arden by William Metcalf while he was asleep at the Metcalf residence.

The indictment, as originally filed, contained three counts. At the close of its case, the government, by its attorney, moved the court to nolle prosequi the second count of the indictment; whereupon the court made the order requested and withdrew the second count from the consideration of the jury.

The first count of the indictment charged: "That Vincent Wontock on or about the 15th day of April, 1911, at Siletz, in the state and district of Oregon, and within the jurisdiction of this court, did unlawfully and feloniously introduce into the Indian country, to wit, in and onto the Siletz Indian reservation, intoxicating liquor, to wit, two bottles of whisky, without having theretofore obtained authority in writing from the War Department, and that Stewart Rooney on or about the 15th day of April, 1911, at Siletz, in the state and district of Oregon, and within the jurisdiction of this court, was then and there at the commission of said felony feloniously present aiding, inciting and abetting the said Vincent Wontock therein; and for the commission of said felony the said Stewart Rooney on or about the 15th day of April, 1911, at Siletz, in the state and district of Oregon, and within the jurisdiction of this court, did feloniously counsel, aid, incite, and procure the said Vincent Wontock to commit, in the manner and form aforesaid, the said felony, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

The third count of the indictment charged: "That Vincent Wontock and Stewart Rooney on or about the 15th day of April, 1911, at Siletz, in the state and district of Oregon, and within the jurisdiction of this court, did unlawfully and feloniously introduce into the Indian country, to wit, in and onto the Siletz Indian reservation, intoxicating liquor, to wit, two bottles of whisky, without having theretofore obtained authority in writing from the War Department, or from any officer hereunto duly authorized by the War Department, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

At the close of the testimony the defendants, and each of them, by their attorney, moved the court to require the government to elect upon which count it relied for conviction upon the testimony offered. The motion was denied.

The jury returned a verdict finding the defendant Stewart Rooney guilty, and Vincent Wontock not guilty as charged.

M. O. Wilkins, of Portland, Or., for plaintiff in error.

John McCourt, U. S. Atty., and Walter H. Evans, Asst. U. S. Atty., both of Portland, Or.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The assignment of errors raises two points:

First. That the court erred in overruling the motion made by the defendant to require the government to elect upon which count of the indictment it would rely.

Second. That the conviction of the plaintiff in error cannot stand after the jury had found Wontock not guilty.

[1] 1. In the first count of the indictment Vincent Wontock is charged as principal, and Stewart Rooney as aiding, inciting, and abetting the said Vincent Wontock in the commission of the crime. In the third count of the indictment both Wontock and Rooney are charged as principals.

Section 1024, R. S. (Act Feb. 26, 1853, c. 80, § 1, 10 Stat. 161 [U. S. Comp. St. 1901, p. 720]), provides:

"When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment, in separate counts; and if two or more indictments are joined in such cases, the court may order them to be consolidated."

We are of opinion that the action of the court below in refusing to require the United States to elect upon which count of the indictment it would rely for conviction was without error. The charges against the plaintiff in error clearly come within the class of charges mentioned in the section above set forth. It would, indeed, be difficult to conceive of two charges more closely connected, and the joinder of which would be more proper, within the meaning of the section, than the charges against Rooney set forth in the indictment in this case. Both charges are based on the same transaction and on the same array of facts. Had the motion of the plaintiff in error to require the government to elect upon which count it relied for conviction been granted, his position before the jury would have remained unchanged. The failure of the trial judge to grant the motion did not place him at a disadvantage, nor were his rights in any way prejudiced or jeopardized. That the question was one which rested solely in the discretion of the court is well settled.

[2] In McGregor v. United States, 134 Fed. 187, 194, 69 C. C. A. 477, 484, the motion to quash the indictment for alleged duplicity was based on the fact that some of the counts charged that the defendants conspired to defraud the United States, and other of the counts charged that the defendants, being officers and agents, or officers and clerks, violated certain sections of the Revised Statutes by receiving money

from an alleged co-conspirator for procuring, or aiding to procure, a contract mentioned in the counts relating to the conspiracy. The court said:

"The offenses charged were, as has been shown, directly connected together, and it was quite apparent to the trial judge that any evidence offered to sustain one count was also admissible and relevant to the other counts of the indictment. Such motions are addressed to the discretion of the court, and are not reviewable on writ of error. Pointer v. United States, 151 U. S. 396, 14 Sup. Ct. 410, 38 L. Ed. 208; Pierce v. United States, 160 U. S. 355, 16 Sup. Ct. 321, 40 L. Ed. 454."

In the case of Dolan et al. v. United States, 133 Fed. 440, 446, 69 C. C. A. 274, 280, ten indictments had been found and returned against all four of the defendants, based upon certain sections of the Revised Statutes. These indictments were identical in language, except that each one dealt with a separate person whom it was charged that the defendants aided and abetted in violating the provisions of said sections. Each of the indictments contained ten separate counts. The counts were all based upon the same transaction but were varied in their language to fit different offenses under the sections alleged to have been violated. The assignment of error challenged the order of the court consolidating the ten indictments on motion of the government, and against the objection of the defendants. The court said:

"The indictments present charges against the defendants which appear to be for 'the same act or transaction.' or, at least, 'for two or more acts or transactions· connected together,' and certainly 'for two or more acts or transactions of the same class of crimes or offenses.' It is contended, however, by counsel for the defendants, that all these early provisions of section 1024 are limited and qualified by the clause, 'which may be properly joined,' and that we must look to the common law to ascertain whether the joinder is proper or not. We do not accept this construction of the statute. Section 1024 (U. S. Comp. St. 1901, p. 720) was intended to abrogate the technical rules of the common law on the subject with which it deals. The clause, 'which may be properly joined,' simply vests in the trial court a sound discretion in deciding whether a fair and impartial trial would be prevented by a joinder, notwithstanding the same would be permitted by one or more of the clauses mentioned in the first part of the section. There are often circumstances which would render a uniting of several offenses unjust to the defendant, and, as the old cases put it, 'confound him in the making of his defense.' Whenever such a situation arises, the trial court will protect the defendant's right to a fair trial. 'Whether the joinder was calculated to embarrass the prisoner, and therefore the offenses not "properly joined" within the meaning of the statute, was a question to be determined by the judge, in his discretion. on a motion to quash or to compel an election.' United States v. Bennett, Fed. Cas. No. 14,572."

In Gardes v. United States, 87 Fed. 172, 176, 30 C. C. A. 596, 600, the court, in construing section 1024 of the Revised Statutes, said:

"The trial judge gets nearer to the case than judges of the appellate court can get. He is especially in a better position to judge of the sound exercise of this discretion than the appellate court can ordinarily reach. Therefore his exercise of this discretion should not be disturbed in cases where it is not clear that it was improvidently exercised."

[3] 2. Can the conviction of the plaintiff in error stand after the jury had found Wontock not guilty? The arguments of counsel for the plaintiff in error in support of this proposition are based upon

the erroneous assumption that Rooney was charged and convicted as accessory, and that Wontock was charged and acquitted as principal. Section 332 of the federal Penal Code of 1910 provides:

"Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or procures its commission, is a principal." Act March 4, 1909, c. 321, 35 Stat. 1152 (U. S. Comp. St. Supp. 1911, p. 1686).

This section is partly taken from sections 5323 and 5427 of the Revised Statutes (U. S. Comp. St. 1901, pp. 3619, 3670), but is enlarged and made of general application. In it there is no distinction made between misdemeanors and felonies, and it is applicable alike to both classes of offenses. The doctrine at common law was that as to misdemeanors all persons who aided and abetted, or who commanded, advised, or encouraged another to commit an offense, were principals, and could be indicted, tried, and convicted as such (4 Bl. Com. 35; United States v. Hartwell, 26 Fed. Cas. 196; United States v. Williams, 28 Fed. Cas. 645); but this doctrine did not apply to felonies. The effect of the section under consideration is to abolish the distinction between principals and accessories in offenses defined in the laws of the United States, whether the same be felonies or misdemeanors. Prior to the enactment of section 332 of the federal Penal Code, similar statutes had been adopted in many of the states, and the section under consideration is a recognition by Congress that the old distinction between principals and accessories which pertained to felonies is generally abrogated, and that a charge against one formerly known as an accessory is good against him as principal.

In Rosencranz v. United States, 155 Fed. 38, 43, 83 C. C. A. 634, 639, the court in construing a statute of Alaska abolishing the distinction between principals and accessories in felonies, said:

"Where a statute has done away with former distinctions between principal and accessory before the fact, * * * a charge against one formerly known as an accessory is good against him as principal, and he must answer to the proofs whether they disclose that he was present and did the overt act, or, not being present, aided and abetted the doing of it in a way to make himself liable as principal."

[4] Even in the absence of a statute abolishing distinction between principal and accessory in felonies, the rule is well settled that all who are present aiding and abetting when a felony is committed are principals either in the first or second degree, and, if in the second degree, they may be arraigned and tried before the principal in the first degree, and that they may be convicted, even though the party charged as principal in the first degree is acquitted. United States v. Hartwell, 26 Fed. Cas. 198.

In State v. Bogue, 52 Kan. 79, 86, 34 Pac. 411, 412, the court said:

"It may be conceded that at common law the acquittal of the principal acquitted the accessory also, and that the conviction of the principal must precede or accompany that of one charged as an accessory. * * * Section 115 of the Criminal Code provides: 'Any person who counsels, aids or abets in the commission of any offense, may be charged, tried and convicted in the same manner as if he were principal.' The evident purpose of the Legislature of our own and other states where similar statutes have been enacted was to do away with those subtle distinctions of the common law between

principals in the first and second degree and accessories before the fact, and to permit the trial of participants in the crime, independently of each other, so that each should suffer punishment for his own guilt, and without being dependent on the result of the prosecutions against others. Of course, if the crime be committed through the instrumentality of another, the acts of such instrument essential to establish the guilt of the person on trial must be shown. The statute does not in any manner enlarge or diminish the essential elements of criminality. It merely does away with a somewhat arbitrary nomenclature which has come down from English jurisprudence, and has been found to be a serious stumbling block in the administration of criminal justice. We think a guilty accessory may be punished, even though the principal escape."

In Goins v. State, 46 Ohio St. 457, 21 N. E. 476, the court said:

"The circumstance that the principal offender, through failure of proof or caprice of the jury, had been convicted of a lower grade, or even acquitted before the aider or abettor was put on trial, cannot affect the question of the guilt or innocence of the latter. The degree of the guilt of the aider and abettor, as well as the question whether he is guilty at all, is to be determined solely by the evidence in the case."

In State v. Smith, 100 Iowa, 1, 69 N. W. 269, the Supreme Court of Iowa, referring to a statute of that state abolishing distinction between accessories before the fact and principals, said:

"The effect of this provision is to make the offense of one who at common law would have been an accessory before the fact substantive, and so far independent that he may be indicted, tried, and punished, and as a principal, without regard to the prosecution of the person who at common law would have been the principal. The guilt of a person who aids and abets the commission of a crime must be determined upon the facts which show the part he had in it, and does not depend upon the degree of another's guilt."

At common law, under the facts in the case at bar, the plaintiff in error could have been indicted, tried, and convicted as principal in the second degree, or as accessory before the fact, or as accessory after the fact. Section 332 of the federal Penal Code abolishes the distinction between principals and accessories, and makes them all principals. The indictment in this case charges the plaintiff in error as principal (jointly with Wontock) in both counts 1 and 3—the former by virtue of section 332 of the federal Penal Code, and the latter by virtue of the language employed. The jury found the plaintiff in error guilty as charged. His acquittal or conviction was in no wise dependent upon the acquittal or conviction of his codefendant Wontock; and the fact that the latter was acquitted cannot affect his guilt.

The judgment of the court below is affirmed.